UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARCUS MILLER, : Case No. 3:10-cv-172
:
    Plaintiff, :
: Judge Timothy S. Black
vs. :
:
WAYNE TOWNSHIP BOARD OF :
TRUSTEES, *et al.*, :
:
    Defendants. :

### DECISION AND ENTRY GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DOCS. 28, 29, 32)

This civil case is before the Court on the Defendants' Motions for Summary Judgment. (Docs. 28, 29, 32). Plaintiff failed to file any memoranda opposing the Motions and the time for doing so has expired.[1] The Motions are now ripe for decision.

### I. FACTS

This case involves of years of contentious litigation over cleaning up "junk" that has accumulated on Plaintiff's property in Wayne Township, Champaign County, Ohio. Recently, the Ohio Second District Court of Appeals set forth a succinct background and procedural history of this dispute, which Defendants all cite substantially in their Motions.[2] The Ohio Court of Appeals summarized the background and procedural history of this case as follows:

---

[1] Counsel for Plaintiff did not appear at a scheduled telephone status conference held on August 3, 2011. Following that conference, Counsel for Plaintiff sent an email to chambers and opposing counsel explaining his diligent, but unsuccessful, attempts to dial into the telephone conference. In the email, Counsel for Plaintiff also informed the Court that Plaintiff "submits the case to the Court upon the filings presently before the Court."

[2] The "Statement of Facts" portion of Plaintiff's Amended Complaint (Doc. 2) is, for the most part, identical to the "Statement of Facts" set forth in Plaintiff's Appellant's Brief filed with the Ohio Second District Court of Appeals. (Doc. 29-1).

{¶ 5} The case before us involves cleanup proceedings that occurred in connection with a property owned by Marcus Miller. The Wayne Township Zoning Inspector originally filed suit against Miller in 2001, but cleanup of the premises did not begin until April 2008. The record currently before us consists of pleadings beginning in June 2008, when Miller filed a motion for protective order, a motion for contempt, and a motion for a damages hearing. Miller claimed in the motions that a prior court order in the case had only authorized the removal of "junk" from Miller's premises, as ascertained by collaboration between Miller and the designated zoning inspector. Miller alleged that representatives of the zoning inspector had improperly removed items from his premises, and had damaged him in an amount in excess of $30,000.

{¶ 6} The trial court held evidentiary hearings in August and September 2008, and the transcripts of the hearings are part of the record. According to the evidence presented at these hearings, the Wayne Township Trustees received several complaints about debris and junk that had accumulated on property located at 6558 State Route 245. The zoning inspector at the time, Richard Tillman, viewed the premises and found debris, unlicensed vehicles, and several pieces of unusable junk. Tillman attempted to talk to the owner, Marcus Miller, but Miller would not talk to him. Tillman then filed the current action in common pleas court in 2001, to attempt to get the property cleaned up.

{¶ 7} A default judgment was issued against Miller in July 2003. In the journal entry, the trial court granted default judgment to Tillman (the then-current zoning inspector), and awarded injunctive relief. The court permanently enjoined Miller from maintaining infractions listed in the complaint for injunctive relief. In addition, the court ordered Miller to bring his property into full compliance with zoning regulations, and to remove junk and unlicensed vehicles from the property. Finally, the court stated that if Miller failed to bring his property into compliance by early September 2003, Tillman, through the Trustees, and with the aid of the Champaign County Sheriff, could abate the violations by removing any unlicensed vehicles that were not in a completely enclosed building, and by removing junk visible from the public highway or neighboring property, at Miller's cost. The court authorized the costs to be assessed to the Champaign County Auditor, for collection as taxes, if Miller failed to pay.

{¶ 8} Miller failed to appeal from the June 2003 court order. He also did not clean up his property, which became progressively worse. Wayne Township did not take action for some time to enforce the court order, because engaging in the type of cleanup operation involved would be a huge undertaking for a small rural township.

{¶ 9} The record of proceedings between 2005 and June 2008 is not before us. Both parties agree that the Zoning Inspector filed a show cause order in May 2005,[3] asking that Miller be held in contempt for failing to comply with the judgment and injunction that had been entered. The parties agree that the trial court entered a further order in June 2005, setting a timetable for compliance with its order. That order is not part of the record before us, but the parties agree that the court ordered Miller to allow access to his property for identification of items to be removed. Miller was also ordered to remove all identified items by late October 2005.[4] Miller failed to appeal from this order, as well.

{¶ 10} Tillman resigned in 2005, and the new Zoning Inspector, Jene Gaver, was substituted as party plaintiff. The parties agree that the Zoning Inspector filed a motion to reaffirm the judgment in February 2006, and that Miller failed to attend the hearing held on this motion. In addition, the parties agree that the trial court issued an order in March 2006, reaffirming its 2003 order.[5] Miller again failed to appeal.

{¶ 11} In May or June 2007, Phillip Hisnay was appointed as the Wayne Township Zoning Inspector. The Trustees subsequently sent Miller a letter indicating that the Trustees, in conjunction with the Champaign County Health Department, would begin cleaning up the

---

[3] The Motion to Show Cause was submitted as a exhibit in this case. (Doc. 29-1). The summary of the Court of Appeals accurately summarizes the motion.

[4] The June 2005 Order of the Champaign County Court of Common Pleas was submitted as an exhibit in this case. (Doc. 29-1). The summary of the Court of Appeals is accurate, albeit Plaintiff was ordered to remove "items identified for removal . . . no later than **October 11, 2005**." (Doc. 29-1) (emphasis in original).

[5] The Motion to Reaffirm Judgment and Order of Injunction Dated July 29, 2003 was submitted as an exhibit in this case. (Doc. 29-1). The Order of the Champaign County Court of Common Pleas, dated March 2006, was also submitted as an exhibit in this case. (*Id.*)

property on April 28, 2008, at 8:00 a.m.[6] The township retained OMAC Hauling (OMAC) to clean up the property. Due to magnitude of the job, the Trustees appointed Tillman as an alternate zoning inspector.

{¶ 12} The cleanup began as scheduled. Because of the amount of waste and materials in the apron just off the road, the first day was spent trying to clear off a work area and a path so that OMAC could get its equipment on the property. Hisnay, Tillman, and John Doty, one of the Trustees, then compiled a list and pictures of 142 items of unused, junk equipment scattered over 100 acres. The list did not include general junk, trash, batteries, tire, and debris, but did include unused equipment and property in view of adjoining residential areas and the public roadway.

{¶ 13} Hisnay, Tillman, and Doty jointly decided what items should be on the list Each item was spray-painted with a number, and a picture was taken. The directive was that if the item was not operable and did not pertain to Miller's operation, it would be considered junk. If any item was deemed questionable, or was an item for which Miller might have a use, Miller was given the benefit of the doubt, and the item was not marked as scrap. Miller was allowed to keep anything he wanted to keep and that he identified.

{¶ 14} Miller arrived at the cleanup site at around 3:00 p.m. on the first day. Miller began removing things himself from the property on the second or third day. Miller and his people began at the back of the property and started working forward, while OMAC was cleaning up solid waste around the house that was located on the site. OMAC had about five or six people working, and it took four weeks for the cleanup to be completed. Miller also hauled items away during the four-week period. OMAC's total charge for the work was $39,838.75, and $16,913.95 was credited against that for steel that was salvaged and sold. OMAC's owner did indicate at the hearings that one of Miller's licensed vehicles was being stored at OMAC's premises and had not yet been removed by Miller.

---

[6] The letter purportedly sent to Plaintiff is attached as Exhibit G to Plaintiff's Deposition. (Doc. 31).

{¶ 15} As was noted, Miller filed motions for contempt, for a protective order, and for damages in June 2008. After meeting with the parties, the trial court filed a journal entry in June 2009, setting an evidentiary hearing in July 2009. The court noted that the purpose of the hearing would be to determine what items had been removed and whether any removal exceeded court orders. The court also referred to its prior entries, and noted that nothing in the orders required "collaboration" by the parties.

{¶ 16} In a further entry filed after the July 2009 hearing, the trial court noted that the parties had appeared with counsel. After counsel made statements, the court determined that the request for protective order was moot, because no personal property had been removed from Miller's house. The court then scheduled a further hearing for early August 2009.

{¶ 17} In early August 2009, the court filed another journal entry indicating that both parties appeared with counsel, and that plaintiff had moved to substitute the current Zoning Inspector, Phillip Hisnay, as party plaintiff. The court noted that Miller did not object and that Hisnay was, therefore, substituted as plaintiff. Finally, the court noted that defendant had presented testimony and evidence, and that the hearing would be continued until early September 2009, to receive further testimony. Two more hearings were held in September, and the trial court then issued a decision. The court held that Miller's contempt motion was without merit, and that the Zoning Inspector had not violated prior court orders. The court specifically stated that it found the Zoning Inspector's witnesses more credible than Miller's witnesses. The court gave Miller thirty days to remove his truck from the OMAC lot or to make other arrangements. In addition, the court declined to void the contract with OMAC, and concluded that Miller's request for damages was moot.

*Gaver v. Miller*, No. 09-CA-46, 2010 WL 3516679, at *1-3 (Ohio App. Sept. 10, 2010).

On April 28, 2010, Plaintiff filed this action naming the following Defendants: Wayne Township; Township Trustees Doug Doty, Glenn Gregg and Grant Johnson, in their official and individual capacities; Township Zoning Inspectors Richard Tillman,

Jene Gaver and Phil Hisnay, in their official and individual capacities; Barbara Moore individually and in her official capacity as Wayne Township Clerk; Russell Wellman, individually and in his official capacity as a Champaign County Health Inspector; OMAC Hauling, LLC and its representative Dustin Owens; Kermit Russell, in his official capacity as Treasurer of Champaign County and individually; and Nick Selvagio, in his official capacity as Prosecutor of Champaign County and individually. (Doc. 2).

Based on the facts and procedural history set forth above, Plaintiff asserts five claims: (1) a civil conspiracy to deprive Plaintiff of constitutional rights; (2) a deprivation of constitutional rights under 42 U.S.C. §§ 1983 and 1985; (3) a deprivation of substantive due process; (4) an unconstitutional taking without just compensation in violation of the Fifth Amendment; and (5) a equal protection violation. (Doc. 2).

Plaintiff claims that certain Defendants took his property without just compensation, deprived him of due process - by failing to notify him of the date of clean-up, by failing to notify him exactly what items constituted "junk," and by failing to provide him an opportunity to contest certain Defendants' allegedly subjective determination of what constituted "junk" under township regulations, and "treated [him] differently from any other farmer in Wayne Township," and conspired not only to do all of the foregoing, but also to place a tax lien on his property to the extent of clean-up costs. (*Id.*) Defendants all move for summary judgment (Docs. 28, 29, 32), and Plaintiff offers no opposing memoranda.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'yes" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).

"Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*. Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III. ANALYSIS

### A. <u>Plaintiff's Takings Claim</u>

At the outset, the Court addresses Plaintiff's claim asserting a taking without just compensation. The Fifth Amendment of the United States Constitution provides, in part, that "private property [shall not] be taken for public use, without just compensation."

U.S. CONST. amend. V. This clause is commonly referred to as the "Takings Clause" or the "Just Compensation Clause." *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985); *River City Capital, L.P. v. Bd. of Cnty. Comm'rs, Clermont Cnty, Ohio*, 491 F.3d 301, 306 (6th Cir. 2007). The Takings Clause "is made applicable against the states and their subdivisions through the Fourteenth Amendment[.]" *River City Capital*, 491 F.3d at 306.

The Takings Clause does not prohibit the mere taking of property, but, instead, prohibits the taking of private property "without just compensation." *Williamson*, 473 U.S. at 194. The Clause also does not require the payment of just compensation before or "contemporaneously with" the alleged taking. *Id*. If an "adequate process for obtaining compensation" exists, "and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Id*. at 194-95.

Here, the Court finds that the Takings Clause does not apply to the facts of this case. Typically, "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996) (involving forfeiture of a vehicle deemed a public nuisance as a result of its involvement in criminal activity). Circuit courts have concluded that ordinances, such as "junk car ordinances," fall within a city's police powers and that proper exercise of such power does not invoke the Takings Clause or require compensation. *Price v. City of Junction, Tex.*, 711 F.2d 582, 591-92 (5th Cir. 1983).

Recently, the Seventh Circuit considered a case similar to the case presented here. There, the court concluded that the removal of personal property, including junk cars, from an unsanitary and unkempt lot "was not an exercise of the county's takings power but rather its police power, which is broader than the takings power and generally will not require compensation for affected owners." *Waldon v. Wilkins*, 400 Fed. Appx. 75, 79 (7th Cir. 2010); *see also Tate v. District of Columbia*, 601 F.Supp.2d 132, 136 (D.D.C. 2009) (finding that a takings claim against government actors for towing and selling a car as a result of unpaid tickets was not proper). Accordingly, the Court concludes here that Plaintiff has not asserted a proper takings claim.

Nevertheless, in this case, Plaintiff was compensated for the "junk" removed from his property. Defendant Hisnay testified that Plaintiff was credited "over $16,900" for scrap metal taken from his property. (Docs. 32-4, 32-6). Plaintiff failed to respond to any of Defendants' Motions for Summary Judgment and has pointed to no evidence whatsoever demonstrating that such compensation was unreasonable or unjust. Accordingly, for all of the foregoing reasons, Plaintiff's takings claim is meritless, and entry of summary judgment in favor of Defendants is proper as a matter of law.

**B.     Applicability of *Rooker-Feldman* and Collateral Estoppel**

Defendants all contend that this Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. Defendants argue that this federal action essentially seeks reversal of decisions rendered by the Champaign County Court of Common Pleas, as well as the decision of the Ohio Second District Court of

Appeals which affirmed the decision of the Common Pleas Court.[7]

The *Rooker-Feldman* doctrine derives its name from two United States Supreme Court decisions interpreting 28 U.S.C. § 1257, which itself "is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision." *Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Services*, 606 F.3d 301, 308 (6th Cir. 2010) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).[8]  Both *Rooker* and *Feldman* involved plaintiffs challenging "the validity of state court decisions by filing suit in federal district court." *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006).

While courts, in the past, have "invoke[d] the *Rooker-Feldman* doctrine in a variety of circumstances in which the federal and state courts enjoy concurrent jurisdiction[,]" the doctrine has "limited application." *Coles v. Granville*, 448 F.3d at 857-58. As more recently clarified, the *Rooker-Feldman* doctrine applies only to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

---

[7] Perhaps notably, the decision of the Ohio Court of Appeals was rendered on September 10, 2010, months after Plaintiff filed suit in this Court.

[8] 28 U.S.C. § 1257 states that, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

*Corp.*, 544 U.S. 280, 284 (2005); *see also Coles*, 448 F.3d at 857-58; *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006).

In other words, the doctrine does not apply simply because "a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil*, 544 U.S. at 293. Where the "federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* "[T]he pertinent inquiry after *Exxon* is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment[.]'" *Kovacic*, 606 F.3d at 309 (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir.2006)).

Here, insofar as Plaintiff asserts injury as a result of the tax lien placed on his property for the costs of "junk" removal, such lien was placed on the property per order of the state court,[9] and, therefore, any claims asserting injury to that extent are barred by the *Rooker-Feldman* doctrine. Further, even assuming a viable takings claim, insofar as the removal of items from Plaintiff's property fell within the scope of the state court's order of removal, the source of the purported injury is the state court order itself.

---

[9] Plaintiff apparently added Kermit Russell, the Treasurer of Champaign County, and Nick Selvagio, Prosecutor of Champaign County, solely in an effort to enjoin the tax lien ordered by the state court. This request for relief against these two named Defendants is barred by the *Rooker-Feldman* doctrine. Accordingly, summary judgment in favor of these two Defendants is proper as a matter of law.

However, most of Plaintiff's claims appear to allege injury stemming from Defendants' execution of the Order. Specifically, Plaintiff contends that Defendants failed to give notice of the clean-up, failed to give notice of what personal property would be removed, that Defendants' determination of what constituted "junk" was arbitrary, and that Plaintiff was not afforded any opportunity to contest Defendants' determination of what constituted "junk."[10] While alleged injuries resulting from these allegations may not fall within the scope of the *Rooker-Feldman* doctrine, *see Waldon*, 400 Fed. Appx at 79, these issues were nevertheless specifically litigated in the state courts and conclusively determined against Plaintiff.[11] Therefore, the Court must determine whether the principles of collateral estoppel apply to bar Plaintiff from re-litigating these issues.

"Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 174 Ohio App.3d 135, 881 N.E.2d 294, 300 (Ohio App. 2007) (citing

---

[10] With regard to Defendant Russell Wellman, an employee of the Champaign County Health District, there is no evidence that Wellman engaged in any of these alleged acts. Wellman testifies that, while he was aware of the clean up at Plaintiff's property and was present at the property only "in the event any health issues arose as to the solid waste removal," Defendant Wellman "did not participate in [the] decision to clean up Plaintiff's property" and "did not participate in the identification, marking, and removal of any property" from Plaintiff's property. (Doc. 28-2). Plaintiff himself did not recall Wellman's presence at his property during the clean-up process. (Doc. 31). Because there is no genuine issue of material fact as to Wellman's lack of involvement in the alleged acts, summary judgment in this favor is proper as a matter of law.

[11] The Ohio Court of Appeals concluded that Plaintiff "failed to present any testimony indicating that the materials in question were other than "junk," by anyone's definition, or had value." *Gaver v. Miller*, 2010 WL 3516679, at *7. Further, the Ohio Court of Appeals concluded that Plaintiff received proper notice, finding that Plaintiff "received a list of 142 items in April 2008, and *was given an opportunity to keep any items that he identified.*" *Id.* at * 4 (emphasis added).

*Thompson v. Wing*, 70 Ohio St.3d 176, 637 N.E.2d 917 (1994); *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969)).

Here, the elements required for preclusion are present. The issues were fully, actually and directly litigated in the state courts, which possessed the jurisdiction to consider the issues. The only issue remaining is privity between Wayne Township, the party to the state court litigation, and the other remaining Defendants in this case, *i.e.*, the individual Township Defendants, OMAC and Dustin Owens.

According to Ohio courts, for purposes of issue or claim preclusion, "[p]rivity was formerly found to exist only when a person succeeded to the interest of a party or had the right to control the proceedings or make a defense in the original proceeding." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803, 806 (Ohio 2007) (citations omitted). "An interest in the result of and active participation in the original lawsuit may also establish privity." *Id.* Further, "individuals who raise identical legal claims and seek identical rather than individually tailored results may be in privity." *Id.* (citing *Brown v. Dayton*, 89 Ohio St.3d 245, 730 N.E.2d 958 (Ohio 2000)).

Privity may also be found where parties share "[a] 'mutuality of interest, including an identity of desired result[.]'" *Id.* (citing *Brown*, 730 N.E.2d 958). Mutuality of interest is only found where "the person taking advantage of the judgment would have been bound by it had the result been the opposite." *Id.* (citing *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees*, 69 Ohio St.2d 241, 431 N.E.2d 672 (Ohio 1982)).

Here, the Court concludes that the individual Township Defendants are in privity with Wayne Township. While Plaintiff attempts to allege claims against the Trustees in their official capacities, as well as "individually," the privity requirement is satisfied nonetheless. "[A]n action against a government official in his or her official capacity is not an action against the official, but, instead, is one against the official's office and, thus, is treated as an action against the entity itself." *State ex rel. Estate of Miles v. Village of Piketon*, 121 Ohio St.3d 231, 903 N.E.2d 311, 315 (Ohio 2009) (citation omitted).

Certainly, based on this legal principle, the individual Township Defendants, in their official capacities, share privity with the Township itself. Further, Plaintiff cannot circumvent the preclusive effect of the state litigation by now asserting claims against the individual Township Defendants in their "individual capacities," especially where the acts alleged in this case are *the exact same acts* that were at issue in the state litigation. *See Kirkhart v. Keiper*, 101 Ohio St.3d 377, 805 N.E.2d 1089, 1093-94 (Ohio 2004); *see also Dennis v. Berne Twp. Trustees*, No. C2-04-CV-1185, 2006 WL 181989, at *4 (S.D. Ohio Jan 24, 2006). Therefore, privity exists between the Township and the individual Township Defendants sufficient to preclude Plaintiff's claims against them.

The Court also finds privity between Wayne Township, OMAC and Owens sufficient to extend the preclusive effect of the state litigation. Certainly, OMAC was a party to the contract Plaintiff sought to void in the state litigation, and the removal of "junk" from Plaintiff's property was the objective of the contract. In that respect, OMAC could have sought to intervene in the state lawsuit to defend its interest. *See* Ohio R. Civ.

P. 24;[12] *see also Howell v. Richardson*, 45 Ohio St.3d 365, 544 N.E.2d 878, 881 (Ohio 1989) (stating that collateral estoppel "does not apply merely to those who were parties to the proceeding. It applies likewise to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity"). Further, OMAC shared a mutuality of interest with Wayne Township not only with regard to the validity of its contract, but also the state court's ultimate determination of whether the clean-up exceeded the scope of its order. Based on these reasons, the Court finds sufficient privity for purposes of collateral estoppel.

Accordingly, Plaintiff is collaterally estopped from asserting that Defendants failed to give notice of the clean-up, failed to give notice of what personal property would be removed, that Defendants' determination of what constituted "junk" was arbitrary, and that Plaintiff was not afforded any opportunity to contest Defendants' determination of what constituted "junk."

### C.  Equal Protection and Civil Conspiracy

Finally, Plaintiff asserts equal protection and civil conspiracy claims, claiming that Defendants maliciously treated him differently than other similarly situated farmers in Wayne Township, conspired to deprive him of his property without just compensation and conspired to deprive him of due process. Plaintiff cites 42 U.S.C. § 1985 in his Complaint

---

[12] Ohio R. Civ. P. 24(A) provides that, "[u]pon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Ohio R. Civ. P. 24(B) provides that "[u]pon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. "

as a basis for his conspiracy claim, which requires proof of:

> "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (citing *United Bhd. of C & J v. Scott*, 463 U.S. 825, 828-29 (1983)). Claims asserted under § 1985(3) require that "[t]he acts which are alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir.1992)).

Here, Plaintiff asserts no class-based discrimination. Instead, Plaintiff appears to assert an equal protection claim on a "class of one theory." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (stating that Supreme Court "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment") (citations omitted). The Sixth Circuit has concluded that asserting membership in a class of one is not a sufficient basis to assert the special protection afforded by 42 U.S.C. § 1985(3). *Royal Oak Entm't, LLC v. City of Royal Oak, Mich.*, 205 Fed. Appx. 389, 399 (6th Cir. 2006) (citing *McGee v. Schoolcraft Cmty. Coll.*, 167 Fed. Appx 429, 436 (6th Cir.2006)). Accordingly, Plaintiff's purported conspiracy claim asserted under § 1985(3) cannot survive summary judgment.

The Sixth Circuit has also recognized civil conspiracy claims asserted under 42 U.S.C. § 1983. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985); *Jackim v. City of Brooklyn*, No. 1:05-cv-1678, 2007 WL 893868, at *15-16 (N.D. Ohio Mar. 22, 2007). Such a claim concerns:

> an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore*, 330 F.3d at 854 (citing *Hooks*, 771 F.2d at 943-44).

A claim asserting conspiracy "must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)). Specifically, with regard to civil conspiracy claim asserted under § 1983, a plaintiff must not only prove "[t]he existence of a conspiracy" but also "[a]n actual deprivation of a right secured under the Constitution by persons acting under the color of state law." *Jackim*, 2007 WL 893868 at * 16 (citing *Abdullah v. Harrington*, 37 F.3d 1498 (6th Cir. 1994) (stating that "'[s]ection 1983 does not . . . punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises'") (quoting *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982))).

Here, Plaintiff's substantive civil rights claims fail for all the reasons set forth above. Plaintiff's claims of due process were conclusively determined against him in the

state litigation. Further, Plaintiff's purported Fifth Amendment takings claim is not proper under the facts of this case, and nevertheless, he was compensated for the alleged "taking" of his property. Thus, Plaintiff not only fails to establish the existence of a conspiracy, Plaintiff fails to show any deprivation of a constitutional right. Accordingly, summary judgment is proper on any purported conspiracy claims asserted under § 1983.

Finally, with regard to Plaintiff's equal protection claim based on a "class of one" theory, Plaintiff must show that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Sheddy Family Trust ex rel. Sheddy v. Piatt Twp.*, 404 Fed Appx. 629, 631 (6th Cir. 2010) (citing *Vill. of Willowbrook*, 528 U.S. 562). Here, not only has Plaintiff failed to allege sufficient facts to support a claim that he "was treated differently from any other farmer in Wayne Township[,]" Plaintiff failed to respond to Defendants' Motions for Summary Judgment, and thus, failed to point to any facts supporting his claim in that regard.

Accordingly, Defendants' are entitled to summary judgment on Plaintiffs' purported conspiracy claims and Plaintiff's equal protection claim.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are **GRANTED** (Docs. 28, 29, 32), and this case shall be terminated upon the docket.

**IT IS SO ORDERED.**

Date: 8/11/11

Timothy S. Black
United States District Judge